UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER TILTON,

    Plaintiff,

    v.

THE MCGRAW-HILL COMPANIES, INC., *et al.*,

    Defendants.

Case No. C06-0098RSL

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on a motion to dismiss filed by defendants the McGraw-Hill Companies, Inc. and Michelle Conlin (collectively, "defendants"). (Dkt. #36). Defendants argue that dismissal is warranted pursuant to the Court's inherent authority and Federal Rule of Civil Procedure 37 for "plaintiff's bad faith conduct, harassment and intimidation of witnesses, extortion, and overall abuse of the judicial process." Motion at p. 1. The Court heard oral argument on the motion on February 12, 2007.

For the reasons set forth below, the Court grants the motion in part and denies it in part.

## II. DISCUSSION

Defendants argue that plaintiff has engaged in a series of egregious conduct in this case,

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 1

warranting dismissal. Defendants allege that plaintiff intimidated and threatened their expert, Dr. Gerald Rosen, refused to produce documents in discovery, destroyed relevant e-mails, and is using this litigation to extort money from Microsoft, his former employer. Before the Court addresses plaintiff's conduct and the appropriate sanction, the Court must first address plaintiff's challenges to the admissibility of some of defendants' evidence.

**A.     Evidentiary Issues.**

**1.     Dr. Rosen's Recordings.**

Defendants' motion is based in part on plaintiff's conduct during his interviews with Dr. Rosen on October 19 and 21, 2006, and his subsequent October 23, 2006 voice-mail message to Dr. Rosen. Plaintiff argues that evidence of all three communications must be excluded. Plaintiff relies on RCW 9.73.030, which prohibits the nonconsensual recording of private communications. Private communications recorded without consent are inadmissible in civil or criminal cases. RCW 9.73.050.

Plaintiff arrived at Dr. Rosen's office on October 19, 2006 for an independent medical examination ("IME"). Plaintiff argues that he did not "knowingly" consent to having the IME tape recorded. In his declaration, plaintiff states that the following occurred:

> We then proceeded into his office and he asked me if it was okay to record on his digital recorder that he said would not interrupt us because it was not like the old tape recorders that have to be turned over. I asked if it was "normal" and "legal" to tape something like this, and he responded that it is a standard, frequent practice. He did not ask me if I consented to recording our session, he told me he would to facilitate the accuracy of his notes taking and that it was necessary that there be an independent recording of our sessions. Camden Hall, my attorney, advised me later that it was not "standard" practice and that I had legal rights about not being tape recorded that were not explained to me. I felt I was tricked by Dr. Rosen into "agreeing" to be tape recorded without his advising me of my right not to be tape recorded and how the recording could be used against me. In short, I did not knowingly consent to his recording me.

Declaration of Peter Tilton, (Dkt. #55) ("Tilton Decl.") at ¶ 33. There is no evidence that Dr. Rosen deceived or misled plaintiff. Instead, Dr. Rosen clearly informed plaintiff that the session would be recorded and the reason for it. The statute states that "consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 2

or conversation, in any reasonably effective manner, that such communication or conversation is about to recorded or transmitted." After having been so informed, plaintiff chose to continue with the session. The statute further requires that the announcement be recorded, which it was.[1] Plaintiff was also informed in writing, in a form that he signed and interlineated, that the assessment interviews would be tape recorded. Declaration of Gerald Rosen, Ph.D., (Dkt. #64), Ex. A.

      Plaintiff alleges that he did not consent because Dr. Rosen did not inform him of his rights. Dr. Rosen was not obligated to inform plaintiff of his "rights" or of all the ways the tape might be used. He was not plaintiff's counsel, and plaintiff was not a criminal suspect. Plaintiff, who was represented by counsel, could have sought legal advice but chose to proceed instead. Furthermore, plaintiff knew that the IME was occurring in the context of this litigation, so his suggestion that he was unaware that it could be used against him is untenable. Plaintiff also argues that exclusion is warranted because he did not consent *on the recording*. The Washington Supreme Court has rejected plaintiff's argument. See State v. Rupe, 101 Wn.2d 664 (1984) (explaining that consent does not need to be on the tape as long as the announcement that the conversation is being recorded is on the tape). In sum, the evidence shows that plaintiff consented to the recording.

      Plaintiff also argues that the recording from the October 21, 2006 session should be excluded because he only consented to the recording to "counter the wrongfully recorded [prior] session." However, plaintiff not only consented but requested to having the second session recorded. Plaintiff also contends that his subsequent voice-mail message should be excluded. However, a party waives any statutory privacy right by leaving messages on an answering

---

[1] Plaintiff also argues that the recording must be excluded because Dr. Rosen failed to announce that the session was being taped at the beginning of the recording. The statute, however, does not require an announcement at the beginning of a recording. Regardless, plaintiff was informed that the session would be taped before it began, then Dr. Rosen referenced the recording just minutes into it.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 3

machine. See, e.g., In re Farr, 87 Wn. App. 177 (1997), *review denied*, 134 Wn.2d 1014 (1998).

Plaintiff also argues that the recordings are inadmissible because they are hearsay. The statements are not offered for the truth of the matter asserted. Regardless, the recordings may also be admissions of a party opponent, excited utterances, and declarations against interest. Finally, plaintiff argues that the recordings have not been authenticated. Defendants should have properly authenticated them with their motion. Defendants authenticated them, albeit belatedly, with their reply. Also, it is undisputed that the recordings contain plaintiff's voice and they were made under the circumstances alleged. Accordingly, there is sufficient evidence, for purposes of this motion, that the recordings are what defendants claim they are.

### 2.   **Deposition Transcripts and Other Exhibits.**[2]

Plaintiff argues that the deposition transcripts defendants submitted were not authenticated. Defendants cured that defect in their reply without prejudice to plaintiff.

Plaintiff also contends that defendants failed to authenticate the exhibits attached to defense counsel's declaration. Although plaintiff alleges that "various" exhibits were not properly authenticated, he lists only Exhibits A and N to the declaration of Gavin Skok, so the Court will address those documents. Exhibit N are Dr. Rosen's recordings, which are addressed above. Declaration of Gavin Skok, (Dkt. #38) ("Skok Decl."). Exhibit A is identified as a true and correct copy of a document produced by plaintiff in discovery. Despite plaintiff's objection, the parties previously agreed that the documents they produced in discovery were authentic. Reply Declaration of Gavin Skok, (Dkt. #62) ("Skok Reply Decl."), Exs. M, N. Although that agreement is not binding on the Court, plaintiff cannot now challenge the authenticity of those documents.

Finally, plaintiff objected to some exhibits attached to the Reply Declaration of Gavin

---

[2] Defendants failed to highlight the relevant portions of their deposition transcripts and other exhibits submitted in support of their motion, including hundreds of pages of single-spaced text. They have violated Local Rule 10(e)(11) and significantly burdened the Court. If they do so again, the Court will impose sanctions.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 4

1  Skok.  Although plaintiff's "objection" should have been filed as a sur-reply, the Court will
2  nevertheless consider the issues raised therein.  The Court did not consider exhibits F, G, J, or L,
3  so their authenticity is irrelevant.  Plaintiff also objects to exhibits A, C, D, and E, which are e-
4  mails that defense counsel states he received from Microsoft in response to a subpoena.  The
5  documents are not offered for the truth of the matter asserted, and regardless, exceptions to the
6  hearsay rules apply.  As for their authentication, defense counsel's representation is sufficient
7  for purposes of this motion under the circumstances.

**B.     Plaintiff's Conduct.**

On September 28, 2006, the Court held a telephone conference with counsel to address plaintiff's refusal to attend his deposition scheduled for October 4, 2006.  The Court did not compel plaintiff to attend due to his personal circumstances.  However, the Court reminded plaintiff of his obligation to cooperate in discovery.

Since then, plaintiff has been verbally abusive to Dr. Rosen, defense counsel, and defendants' in-house counsel.  During the second session on October 21, 2006, plaintiff consistently and disrespectfully referred to Dr. Rosen as "Gerry" and repeatedly used expletives with a loud, aggressive, and angry tone.  Skok Decl., Ex. N (stating, "How the fuck do you think I am today, Gerry?" and "Fuck you, Gerry!  Go fuck yourself!  Put your head up your ass until you can kiss yourself!").  He also accused him of unprofessional and unethical conduct, of exploiting him, and of questioning him in certain areas based on "his own perverted homosexual fantasies."  He stated that Dr. Rosen, by questioning his counselor's qualifications, "is worse than Hitler gassing Jews."  Id.; see also Tilton Dep. at p. 43 (calling defense counsel "a bald-faced liar"); id. at pp. 276-77 (telling defense counsel that he could "learn some real good techniques to be a totally dishonest, unethical person" from his co-counsel); id. at pp. 72-73 (referring to Business Week's in house counsel, who attended his deposition, and others as "wicked, evil serpents").

Plaintiff has also threatened Dr. Rosen.  During the October 21 session, plaintiff stated,

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 5

"You are the most unethical doctor I've ever encountered in my entire life and I can't wait to expose who you are. And that tape will be deposed and I'm going to write the whole story out about you and I'm going to find a picture about you and you need to submit that I am a suicide risk and I will find some psychologists that will have me fight against your total dishonesty and total ethics." Plaintiff's threat to defame Dr. Rosen and ruin his reputation was even more explicit in his October 23 voice-mail message:

> I just wanted to let you know I'm submitting a 16-page complaint about you to the judge in the discovery process in the deposition process and I'm going to be using that as my basis to send it to every single certification board and anybody that deals with medical ethics and however you're licensed, I'm going to figure out what the formal complaint process is and take that as far as I possibly can and I'm going to do everything I can to discredit you and ruin your despicable . . . ruin your reputation. . . . You're a disgusting person and I'm going to do something about it and I'm going to complain about you to the judge and everybody I know and everybody I can find and I'm going to do everything I can to totally ruin your reputation, because you're a dishonest, unethical person who has damaged me beyond any immeasurable amount of belief because of what you've done to me.

Skok Decl., Ex. N. Although a person is entitled to pursue a professional complaint, it appears that plaintiff is motivated to ruin Dr. Rosen's reputation rather than to pursue a legitimate complaint through the proper channels. Plaintiff's threats in that context are totally inappropriate.

Defendants' motion is also based in part on the fact that plaintiff has repeatedly threatened to use this litigation to exact a financial payout from Microsoft. In a series of e-mails from April 2005, plaintiff repeatedly threatened Microsoft, including threatening to expose issues related to whistle blowing and the Sarbanes-Oxley Act. He titled the e-mails "Can we negotiate?" Skok Decl., Ex. C. In what appears to be the final e-mail in the chain, plaintiff writes, "Then there is the lawsuit with business week [sic] that will complicate any agreement I make with Microsoft. I could reverse engineer my lawsuit with Business Week, and instead leverage them to help make any case I need to make." Id. Plaintiff and Microsoft entered into a Resignation Agreement and Release in May 2005.

In another series of e-mails written in June 2006, plaintiff threatens to expose ten years of

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 6

audit histories at Microsoft regarding corporate governance issues unless his demands are met. Id. at Ex. G. He explains that he will call several Microsoft witnesses to testify in the Business Week case. In one of the most blatant communications, plaintiff states in a June 19, 2006 e-mail to Microsoft, "I have decided not to settle the Business Week case, and we will try Charlie McNerney and Microsoft's management and corporate governance processes when the case arrives in court in March of 2007." Skok Decl., Ex. G (explaining that he would pursue the Business Week case unless Microsoft paid him $5 million). Plaintiff clearly knew that what he was doing was improper, because his e-mail goes on to state, "My attorney did not approve and did not know about this email. Sorry Camden." Id. The e-mail also includes what appear to be threats of violence:

> I'll find people who are ready to leave their bodies and move on to the next incarnation, who also believe in leaving a little charred BBQ behind to commemorate the event and change the world. Please do not worry. These people will be happy to be burned alive . . . . It might end in a writhing mess of agony and screaming, but no one really thought about that and they probably won't.

Id. Plaintiff made another threat and demand approximately one week later. Id., Ex. H ("If someone doesn't help me out to drop this Business Week lawsuit I will pursue the truth and I think a lot of this warrants organizing a class action lawsuit for stockholders"). Although Microsoft's counsel sent plaintiff a cease and desist letter, he sent an e-mail in early July 2006 explaining that he was planning to send a formal complaint to the SEC because Microsoft did not accede to his demands. Skok Decl., Ex. J. In addition to his financial motives, plaintiff explained that he "hope[s] what [he does] hurts and embarrasses everyone" at Microsoft. Id., Ex. K; see also id., Ex. L ("This will be fun to put everyone on the stand to substantiate all the comments about Microsoft in [the Business Week] article. It is just another direct map back to the complicated virus like structure of nepotistic, incompetent management . . . ."). As recently as October 10, 2006, plaintiff was pressuring Microsoft to settle with him before his upcoming deposition, during which he was "prepared to put the Business Week case into the full light and context of the massive corporate governance outrage that has gone on at Microsoft for years."

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 7

Skok Reply Decl., Ex. D; id., Ex. E (threatening exposure of Microsoft issues in the Business Week case unless Microsoft contacted him about a settlement).

During his deposition on October 20, 2006, plaintiff was unashamed of his efforts to harass Microsoft and extract payments. When questioned if he asked the company to pay him $5 million, plaintiff responded, "I don't recall all the things I've asked them. I've tried to badger them and pepper them with information and tried to get them really upset and do things that harass them because they are despicable with the way that they treated me near the end of my career." Tilton Dep. at p. 47; id. at p. 48.[3] This testimony strongly suggests that plaintiff will seek to use this litigation as a forum to embarrass and air his personal grievances against Microsoft.

Defendants further allege that plaintiff willfully withheld a copy of a lengthy complaint letter he wrote against Dr. Rosen after the IME (the "Dr. Rosen letter"). In response to a request for production requesting the document, plaintiff objected on the basis of privilege and stated that other than review by his counsel, "[n]othing further has been done with it." Plaintiff's Opposition, Ex. 2 at p. 20. Plaintiff verified the responses with his signature on November 21, 2006. Plaintiff also filed a sworn declaration dated November 27, 2006 in opposition to the motion to dismiss acknowledging defendants' allegation of withholding and stating, "Defendants are making another dramatic, baseless claim. There is no letter, yet. I have not completed the letter nor have I sent it to the appropriate agencies, nor have I identified the appropriate agencies. I am actively working on the letter and have provided a draft to my attorney for his review and for my response to this motion. It is, therefore, privileged." Tilton Decl. at ¶ 54. In fact, plaintiff e-mailed the letter to several third parties, including Bill Gates, on October 26,

---

[3] During his deposition, plaintiff admitted that he "tried to suggest that [Microsoft] negotiate a settlement with me so that we could keep their corporate governance . . . failures within the company and . . . that I didn't have to accidentally have all that stuff spill into the Business Week lawsuit with a bunch of people who would love to get a hold of that." Tilton Dep. at p. 48.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 8

2006, approximately one month before he signed his declaration and discovery response.  Skok Reply Decl., Ex. A.  Plaintiffs' counsel, clearly embarrassed by the incident, has filed a disclosure correcting his prior representation that the Dr. Rosen letter was privileged and explaining that plaintiff never told him that he had sent the letter to third parties.[4]  Plaintiff's lack of candor with the Court, defendants, and his own counsel is very troubling and casts serious doubt on whether he will be truthful if the proceedings continue.

Defendants also allege that plaintiff has refused to provide all responsive documents.  He has repeatedly threatened Microsoft that he possesses and will produce additional Microsoft documents unless they meet his demands.  Skok Reply Decl., Ex. A at p. 3 (October 26, 2006 e-mail to Microsoft stating, "The law is going to require me to produce what I have.  I guess I will begin searching for everything I have and begin providing it accordingly"); Skok Decl., Ex. G (stating in an e-mail dated June 2006, "I am preparing to provide Business Week with all the details of the Charlie McNerney case, and with more prodding I will eventually provide all the email and allegations . . . ."); id. at Ex. H.  Plaintiff's October 26 e-mail notes that despite defendant's request for all documents related to his employment at Microsoft, he had not yet begun to search for them, a fact he confirmed in deposition.  Tilton Dep. at p. 52 (explaining that he had not looked for any Microsoft-related documents in his possession).  Plaintiff cannot claim to be withholding the documents for any legitimate reason when he has not even reviewed them, has never moved for a protective order, and has represented to Microsoft that they are discoverable and used them as leverage on that basis.  Furthermore, regardless of whether plaintiff is actually withholding documents, he is obviously using the threat of their existence in his on-going efforts to harass and threaten Microsoft.

---

[4] Plaintiff's counsel filed his disclosure pursuant to Rule of Professional Conduct 3.3, which requires counsel to correct a false statement of material fact previously made to the tribunal.  The Court appreciates counsel's candor with this Court, and is confident that counsel believed that the document was privileged when he previously made that assertion.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 9

Defendants further contend that plaintiff has refused to produce and has destroyed copies of recent e-mails he sent to Microsoft. Plaintiff responds that he did not produce the e-mails because his system does not save sent e-mails. He copied himself on those communications, however, so he had copies of them at some point. See, e.g., Skok Reply Decl., Exs. C, D, E. Plaintiff's destruction of those e-mails is very troubling.

Defendants also allege that plaintiff has refused to produce his journals.[5] Plaintiff has asserted and continues to maintain that the documents are privileged and created, at least partially, at the request of his counsel. Similarly, defendants allege that plaintiff has refused to follow up with third parties, including the IRS, to release documents to defendants. Skok Decl. at ¶ 17. Plaintiff counters that he signed releases for defendants to obtain the documents. Tilton Decl. at ¶ 104. Based on the current record and before counsel have met and conferred regarding these issues, it is premature for defendants to move for sanctions based on them.

Defendants also allege that plaintiff has refused to produce a list and spreadsheet related to his calculation of damages. Plaintiff alleges that he created the documents at the request of his counsel. Counsel disagree about whether they have met and conferred regarding that issue. Accordingly, sanctions are not appropriate for plaintiff's refusal to produce the spreadsheet.

**C.    The Appropriate Sanction.**

Plaintiff argues that defendants are not entitled to discovery sanctions based on Federal Rule of Civil Procedure 37 because they did not meet and confer regarding the "damages or Journalism issues," they did not first file a motion to compel, and plaintiff's conduct did not violate a Court order. Defendants have also requested that the Court impose sanctions pursuant to its inherent authority. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32 (1991). Because plaintiff's misconduct is broader than discovery abuses, the Court will assess the propriety of sanctions under its inherent power. The Court will focus on whether plaintiff's conduct

---

[5] During the oral argument in this matter, the Court ordered plaintiff to provide the Court with relevant portions of his journals for an *in camera* review.

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 10

evidences bad faith.  See, e.g., Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001).

As set forth above, plaintiff's conduct has been egregious.  He has harassed and attempted to use this case to exact a payout from Microsoft, threatened defendants' expert, withheld and destroyed relevant documents, and demonstrated disrespect for the judicial process and its participants.  These actions, singly and together, are sufficient to support a finding of bad faith.  See, e.g., In re Intel Sec. Litig. v. Itel, 791 F.2d 672 (9th Cir. 1986) (finding bad faith where counsel submitted objections to exact fee concessions in an action pending in another court, even though the objections were not frivolous or knowingly meritless).  Plaintiff's conduct has been "utterly inconsistent with the orderly administration of justice," and threatens to interfere with the rightful resolution of the case.  Wyle v. R.J. Reynolds, Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983) (imposing sanctions).  Plaintiff's lack of remorse and the recency of his wrongdoing further evidence bad faith and cast serious doubt on whether he will change his behavior absent sanctions.

Several factors also weigh against dismissal.  Defendants have not filed a motion to compel, and plaintiff's discovery abuses did not violate any Court order.  Defendants exaggerate by stating that plaintiff has not participated in discovery.  Despite his violations, he has been deposed and has propounded and responded to written discovery.  As discussed below, other, less extreme sanctions may be effective.  Public policy favors resolution on the merits.

Plaintiff's conduct has been egregious, and the propriety of dismissal is a close call.  Tipping the balance against dismissal is the fact that the Court is reluctant to deny a litigant his day in court, and is even more reluctant to do so in this case because plaintiff's conduct appears partially related to his troubled state and his misguided efforts to rebuild his life.  According to plaintiff's former psychiatrist, plaintiff has experienced depression, anxiety, emotional reactivity, irritability, and substance abuse disorders.  Declaration of Dr. Daniel Wolf, (Dkt. #56) ("Wolf Decl.") at ¶ 4.  Plaintiff did not obtain psychiatric treatment for a period of time from approximately mid-2005 until very recently because he lost his health insurance and was

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 11

unable to afford care. A review of plaintiff's e-mails and communications with Dr. Rosen reflect that he is troubled. Plaintiff conducted himself appropriately at the oral argument. Counsel indicated that plaintiff was back on medical care and medication, and the Court took this into consideration. For all of these reasons, the Court will not dismiss the action. Plaintiff, however, is *strongly* cautioned that any further misconduct may result in dismissal and/or other sanctions.

After concluding the dismissal is not warranted at this time, the Court also addresses the propriety of an alternate sanction. Plaintiff's emotional difficulties, while a mitigating factor, do not totally excuse his conduct. As reflected in his e-mails and deposition testimony, he knew he was engaging in improper conduct, yet chose to do so repeatedly. Although plaintiff blames defendants for causing him emotional distress, they are not responsible for the egregious actions that are the subject of this motion. Plaintiff's former psychiatrist opined that Dr. Rosen's tone and word choice "may have contributed to Mr. Tilton's emotional reactivity" during the second IME session. Wolf Decl. at ¶ 6. During his deposition, Dr. Wolf opined that he did not know if the situation escalated as a result of anything Dr. Rosen said. Wolf Dep. at pp. 107-08. After listening to the recording of the October 21 session, it does not appear to the Court that Dr. Rosen escalated plaintiff's diatribe. Even if he had, it does not excuse plaintiff's conduct or his subsequent vitriolic and threatening voice-mail two days later.

Fashioning an appropriate sanction short of dismissal is complicated by the fact that defendants did not propose or request an alternative. Monetary sanctions are unlikely to have any effect given plaintiff's current financial situation. The Court will not exclude any of the disputed evidence, such as the Microsoft e-mails, because doing so would only benefit plaintiff.

The Court also has considered precluding plaintiff from arguing that the article led to his dismissal from Microsoft or seeking damages related to the termination of his employment from Microsoft. Doing so would punish plaintiff for his improper conduct, deter similar misconduct,

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 12

prevent plaintiff from attempting to use this litigation to embarrass and harass Microsoft's employees, and protect defendants from any further delay and waste of resources caused by plaintiff's threats to Microsoft and withholding of Microsoft related documents.  It would also protect defendants from the prejudice they will suffer if plaintiff succeeds in his efforts to intimidate and influence Microsoft witnesses.  While the sanction would preclude plaintiff from seeking damages related to that issue, it would not be dispositive or tantamount to a dismissal.  Accordingly, pursuant to its inherent power, the Court precludes plaintiff from arguing that the article led to his dismissal from Microsoft or seeking damages related to the termination of his employment from Microsoft.  This order does not affect plaintiff's other non-economic damages or limit his ability to argue and present evidence to show that (1) the article damaged his reputation, which has impacted or will impact his ability to obtain other employment, and/or (2) the article caused or exacerbated plaintiff's health issues, which has impacted or will impact his ability to obtain other employment.  Plaintiff will not be granted an extension of the discovery deadline or expert witness disclosure deadline to obtain additional evidence regarding future wage loss.

The Court will contact the parties to schedule a status conference to set a trial date.  Also, within ten days of the date of this order, the parties should consider and discuss with each whether another mediation session might be beneficial in light of this order.  In the meantime, plaintiff must provide a copy of the relevant portions of his journals to the Court for an *in camera* review within twenty days of the date of this order.  Thereafter, the Court may order production of the journals and a brief continuation of plaintiff's deposition prior to the status conference.

### III.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Dkt. #36) is GRANTED IN

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 13

PART AND DENIED IN PART.

DATED this 9th day of March, 2007.

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS - 14